# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

*EX PARTE* APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM CITIBANK, N.A., THE CLEARING HOUSE PAYMENTS COMPANY L.L.C. AND THE FEDERAL RESERVE BANK OF NEW YORK

Case No. _____

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM CITIBANK, N.A., THE CLEARING HOUSE PAYMENTS COMPANY L.L.C. AND <u>THE FEDERAL RESERVE BANK OF NEW YORK</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

JURISDICTION AND VENUE ...............................................................2

FACTUAL BACKGROUND....................................................................2

   I.   ZHONGSHAN FALLS PREY TO A CYBER FRAUD ....................2

   II.   ZHONGSHAN INVESTIGATES THE FRAUD.............................5

   III. ZHONGSHAN CONTEMPLATES CIVIL AND CRIMINAL LITIGATION IN BRAZIL ..............................................................6

   a.   Contemplated Criminal Proceeding..............................................6

   b.   Contemplated Civil Proceedings...................................................7

   IV. THE DISCOVERY ZHONGSHAN SEEKS.................................8

ARGUMENT .........................................................................................9

   I.   THE APPLICATION MEETS EACH OF THE STATUTORY REQUIREMENTS FOR DISCOVERY ..............................................9

      A.   The Discovery Subjects Reside or Are Found in the Southern District of New York 10

      B.   The Requested Discovery is "For Use" in the Foreign Proceedings.........................10

      C.   Zhongshan is an Interested Person .............................................11

   II.   EACH OF THE DISCRETIONARY FACTORS WEIGHS STRONGLY IN FAVOR OF GRANTING THE APPLICATION ...........12

      A.   The Discovery Subjects Are Not Participants in the Foreign Proceedings...............13

      B.   The Nature of the Brazilian Courts, the Character of the Foreign Proceedings, and the Receptivity of the Brazilian Courts Support Granting the Discovery Requested ......14

      C.   The Applicant Does Not Seek to Circumvent Proof-Gathering Restrictions or Other Policies....................................................16

      D.   The Requested Discovery is Not Unduly Burdensome.............................17

   III. *EX PARTE* RELIEF IS CUSTOMARY AND APPROPRIATE HERE .....................20

CONCLUSION.....................................................................................21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012) ........................................................................................... 15, 19

*Esses v. Hanania,*
    101 F.3d 873 (2d Cir. 1996) ................................................................................................... 27

*Euromepa, S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995) ....................................................................................... 15, 19, 20

*Gasolinera Petroleos Venezuela,*
    No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. 2011) ........................................................ 26

*Gushlak v. Gushlak,*
    486 F. App'x 215 (2d Cir. 2012) ..................................................................................... 10, 27

*In re Gemeinschaftspraxis Dr. Med. Schottdorf;*  2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006),
        3844464, at *7 (S.D.N.Y. Dec. 29, 2006) ....................................................................... 24

*In re Hornbeam Corp.*, No.14 Misc. 424 (Part 1),
    2015 WL 13647606 at *4 (S.D.N.Y. Sept. 17, 2015), ........................................................ 28

*In re Accent Delight Int'l Ltd.,*
    869 F.3d 121 (2d Cir. 2017) ................................................................................................. 13

*In re Application of Grupo Qumma,*
    No. M 8-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) .................................................... 15

*In re Chevron Corp.,*
    709 F. Supp. 2d 283 (S.D.N.Y. 2008) .................................................................................. 17

*In re De Aquino Chad,*
    No. 19-MC-261, 2019 WL 2502060 (S.D.N.Y. Jun. 17, 2019) .................................... 21, 23

*In re de Melo Pimenta,*
    942 F. Supp. 2d 1282 (S.D. Fla. 2013) .......................................................................... 22, 23

*In re Fleischmann,*
    466 F. Supp. 2d 1020 (N.D. Ill. 2006) .................................................................... 19, 22, 23

*In re Hill,*
    No. M 19-117 (RJH), 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) .................................. 24

*In re Ishihara Chem. Co.,*
    121 F. Supp. 2d 209 (E.D.N.Y. 2000) ................................................................................. 27

ii

*In re Letter of Request from Supreme Court of Hong Kong*,
    138 F.R.D. 27 (S.D.N.Y. 1991) ........................................................................27

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992)................................................................................15

*In re Mangouras*,
    No. 17-mc-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017)............................24

*In re Mesa Power Group, LLC*,
    2012 WL 6060941 (D.N.J. Nov. 20, 2012) ........................................................27

*In re O'Keeffe*,
    646 F. App'x 263 (3d. Cir. 2016) ......................................................................21

*In re Optimal Investment Servs. S.A.*,
    773 F.3d 456 (2d Cir. 2014)...............................................................................18

*In re Servicio Pan Americano de Proteccion*,
    354 F. Supp. 2d 269 (S.D.N.Y. Dec. 6, 2004) ...................................................21

*In re Sveaas*,
    249 F.R.D. 96 (S.D.N.Y. 2008) .........................................................................17

*In re Vinmar Overseas, Ltd.*,
    No. 20-mc-277 (RA), 2020 WL 4676652 (S.D.N.Y. Aug. 12, 2020) ...........11, 17

*In re Xavier*,
    No. 05-12218, 2006 WL 858489 (11th Cir. 2006) .............................................21

*In re  Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*,
    2013 WL 6164435 n.1 (E.D. Pa. Nov. 22, 2013) ..............................................27

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004),...............................................................10, 12, 13, 14, 16

*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*,
    2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015)..................................................14, 18

*Lopes v. Lopes*,
    180 F. App'x 874 (11th Cir. 2006) ....................................................................22

*Mees v. Buiter*,
    793 F.3d  (2d Cir. 2015)....................................................................................25

Medeiros v. Int'l Game Tech., No. 2:16-cv-00877-JAD-NJK, 2016 WL 1611591, at *3 (D.
    Nev. 2016),
      1611591, at *3 (D. Nev. 2016) .....................................................................22

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...........................................................................................25

*Westjest Airlines, Ltd. v. Lipsman*,
  2015 WL 7253043 (D. Colo.  Nov. 17, 2015) .................................................................13

<u>Statutes</u>

28 U.S.C. § 1331 ..........................................................................................................................2

28 U.S.C. § 1391 ..........................................................................................................................2

28 U.S.C. § 1782 ..............................................................................1, 10, 11, 16, 20, 27, 28

28 U.S.C. § 1782(a) ...............................................................................................................2, 10

U.S.C. § 1782(a) .........................................................................................................................25

<u>Rules</u>

Fed. R. Civ. P. 26(b)(1).............................................................................................................25

Fed. R. Civ. P. 45 .......................................................................................................................27

Federal Rules of Civil Procedure. 28 ....................................................................................25

Rule 26 of the Federal Rules of Civil Procedure ................................................................25

<u>Other Authorities</u>

*International Litigation*,
  35 S. Tex. L. Rev. 215 (1994)...............................................................................................19

Applicant Zhongshan Quimica do Brasil Ltda. ("Zhongshan" or the "Applicant") respectfully submits this memorandum of law in support of its (1) *ex parte* application for judicial assistance pursuant to 28 U.S.C. § 1782 (the "Application"), allowing Zhongshan to issue subpoenas to Citibank, N.A. ("Citibank"), The Clearing House Payments Company L.L.C. ("CHIPS") and The Federal Reserve Bank of New York (the "Fed-NY") (together, the "Discovery Subjects"), for documents for use in contemplated civil and criminal proceedings in Brazil (individually, the "Contemplated Criminal Proceeding" and the "Contemplated Civil Proceeding," and together, the "Foreign Proceedings").

## PRELIMINARY STATEMENT

Late last year, Zhongshan, the Brazilian subsidiary of Zhongshan Chemical, a global leading agrochemical manufacturer, purchased approximately US $3.5 million dollars in chemicals from Pilarquim,[1] a major Chinese agricultural products manufacturer that also operates in Brazil.  As Zhongshan and Pilarquim began discussing payment for these chemicals via email, a phisher intercepted the email exchange. The phisher proceeded to mimic Pilarquim's email domain names to communicate with Zhongshan.   While impersonating Pilarquim, the phisher proposed to Zhongshan changing the destination of the funds from the intended account at another financial institution belonging to Pilarquim, to a Citibank account in New York, and purported to sign off on that change. Because all the Pilarquim personnel who ordinarily signed off on invoices had apparently signed off on the payment to the Citibank account, Zhongshan arranged for funds to be transferred to the Citibank account. Zhongshan realized that the funds had been transferred to the wrong account when Pilarquim asked Zhongshan about the status of payment for the chemicals. Through this Application, Zhongshan seeks to identify the phisher and to identify the location of the stolen funds.

---

[1] As used herein, Pilarquim refers to Pilarquim Br Comercial Ltda and Pilarquim (Shangai) Co., Ltd.

## JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782(a). Venue in this District is proper under 28 U.S.C. § 1391 because the intended subpoena recipients are found in this District. Citibank's headquarters are located at 388 Greenwich Street, New York, NY 10013; CHIPS's headquarters are located at 1114 Avenue of the Americas, 17th floor, New York, NY 10036; and Fed-NY's headquarters are located at 33 Liberty Street, 12th floor, New York, NY 10045. Declaration of E. Martin De Luca, dated April 28, 2023 ("De Luca Decl.") at ¶¶ 8-12 and Exs. E, F, G, H & I.

## FACTUAL BACKGROUND

### I.    ZHONGSHAN FALLS PREY TO A CYBER FRAUD

In 2022, Zhongshan acquired 241,920 liters of chemical fungicide and insecticide from Pilarquim. Declaration of Juliana Sá De Miranda, dated April 28, 2023 ("Miranda Decl.") at ¶ 5. To obtain payment for these chemicals, Pilarquim issued purchase orders to Zhongshan totaling US $3,513,888.00. *Id.* at ¶ 6. In November 2022, as Zhongshan and Pilarquim began discussing payment for these chemicals, a phisher intercepted their email communications. *Id.* at ¶ 8. The phisher impersonated Pilarquim employees by creating nearly identical email addresses and email signatures. *Id.* For example, instead of firstname-lastname@pilarquim.com, the phisher used the email address firstname-lastname@pilarqium.com, in which it swapped the letters "u" and "i" in Pilarquim. *Id.* On November 6, 2022, the phisher sent the first email to Zhongshan using the domain name firstname-lastname@pilarqium.com, mirroring the contents of valid emails sent by Pilarquim. *Id.* at ¶ 9.

On November 8, 2022, the phisher contacted Zhongshan again and proposed changing the destination of the funds to a Citibank account in New York. *Id.* at ¶ 10. Zhongshan asked a Pilarquim employee named Douglas Jorge ("Jorge") to confirm the bank coordinates. Miranda

Decl. at *Id.* De Luca Decl. at ¶ 15 and Ex. L (Citibank Payment Details). Because Zhongshan replied to the same email thread that had been intercepted by the phisher, Zhongshan's request went to a false email domain the phisher had created. Miranda Decl. at ¶ 10. The phisher responded to Zhongshan confirming the Citibank coordinates. *Id.* On November 10, 2022, Pilarquim's real employee, Jorge, asked Zhongshan's finance department if the payment could be made in the following week, so that Jorge could inform Pilarquim's headquarters in China. *Id.* at ¶ 11.

Zhongshan agreed to pay the invoices in two installments, one in mid-November 2022 and the other at the end of November 2022. *Id.* On November 11, 2022, Zhongshan agreed to a currency exchange deal with Banco XP, a Brazilian bank, to send US $2.3 million to the Citibank account. *Id.* at ¶ 12. At that time, Zhongshan believed the Citibank account belonged to Pilarquim.  Banco XP asked whether the payment settlement instructions would be the same, given the change of destination of the funds. *Id.* at ¶ 13. Zhongshan called Jorge to confirm the payment instructions. *Id.* Jorge said that he would confirm and get back to Zhongshan. *Id.* Zhongshan sent a follow-up email to confirm the conversation, which the phisher intercepted. *Id.* The phisher responded to Zhongshan's email, confirming that the Citibank account should be used for the payment. *Id.* at ¶ 14. Separately, Jorge also sent an email, stating that he was trying to confirm the bank coordinates of the invoices. *Id.* On November 16, 2022, the phisher sent an email, following up regarding the payment. *Id.* at ¶ 15. Later that day, Jorge followed up to ask about the status of the payment. *Id*. On the same day, Zhongshan made the payment to the Citibank account. *Id.* at ¶ 16.

On November 17, 2022, Zhongshan attached the Swift bank transfers for three invoices that had been paid to the Citibank account and stated that Zhongshan would pay the remaining invoice at the end of the month. *Id.* On November 23, 2022, Jorge followed up regarding the invoice that was due at the end of the month, but said nothing about the three invoices that

Zhongshan had already paid. *Id.* at ¶ 17. Zhongshan replied that it would pay the remaining invoice on November 25, 2022, through a bank transaction processed by Banco Itaú, a Brazilian bank, for US $884,822.40. *Id.*

On December 2, 2022, Jorge asked Zhongshan if the remaining invoice had been paid, as Pilarquim's Chinese headquarters had not received it. *Id.* at ¶ 18. Zhongshan replied that the remaining invoice had been paid and attached the Swift bank transfer to confirm. *Id.* Jorge responded that Pilarquim was still trying to locate the payment for the remaining invoice, but again was silent about the three invoices paid earlier in November 2022. *Id.* at ¶ 18. On December 8, 2022, Zhongshan emailed Pilarquim, requesting an extension for payments due for additional open invoices. *Id.* at ¶ 19. On December 13, 2022, Jorge replied with a counterproposal. *Id.* Zhongshan and Pilarquim continued this email discussion for several days, which led Zhongshan to believe that Pilarquim had received the payments made to the Citibank account. *Id.*

On December 20, 2022, Jorge asked about the November 25, 2022, payment, stating that Pilarquim had not received it. *Id.* at ¶ 20. Jorge asked whether the transfer had been sent back to Zhongshan. *Id.* On December 22, 2022, Zhongshan asked why Pilarquim was raising this issue nearly a month after the payment had been made. *Id.* On December 27, 2022, Jorge sent four additional invoices to Zhongshan. *Id.* at ¶ 21. Jorge indicated that these payments should be made to Pilarquim Shanghai, and should be sent to a new bank, known as Military Bank. *Id.* On the same day, another Pilarquim employee named Emily Chu ("Chu") confirmed the change to the bank coordinates. *Id.* On December 29, 2022, Zhongshan agreed to a currency exchange deal with Banco XP to send US $500,000 to Military Bank. *Id.* at ¶ 22. On the same day, the phisher, using Chu's email address, asked if Zhongshan had made the payment to Military Bank. *Id.* Zhongshan attached the Swift bank transfer to confirm. *Id.*

On January 2, 2023, J.P. Morgan, Banco XP's correspondent bank, sent a message

stating that that J.P. Morgan was attempting to settle the transfer to Military Bank but that the beneficiary was not correct. *Id.* at ¶ 23. On the same day, Zhongshan sent an email to Jorge to understand the situation. *Id.* The same day, Zhongshan received an email with new payment instructions. *Id.* Zhongshan contacted Jorge by WhatsApp to inform him that any change to bank coordinates should be made by video for confirmation. *Id.* At this point, Jorge checked previous payments, and Zhongshan realized that someone had perpetrated a fraud. *Id.* at ¶ 24.

## II.     ZHONGSHAN INVESTIGATES THE FRAUD

In January 2023, Zhongshan hired Marcelo Lau ("Lau"), an expert in data security and fraud prevention, to prepare an expert report on the cyber fraud described above. *Id.* On February 3, 2023, Zhongshan, Lau and Pilarquim had a call in which Pilarquim shared some of the emails exchanged with the phisher. *Id.* at ¶ 25. Following the call, Lau requested that Pilarquim provide all relevant emails. *Id*. Pilarquim has not yet sent any of the requested emails to Zhongshan. *Id.* Lau delivered a final report in March 2023, finding that (i) the phisher first breached Pilarquim's system, (ii) the phisher then created firstname-lastname@pilarqium.com email domain names (by swapping "u" and "i" in Pilarquim) to impersonate Pilarquim employees, and (iii) the phisher created firstname.lastname@zschems.com email domain names to impersonate Zhongshan employees by adding an "s" to Zhongshan's standard domain name: firstname.lastname@zschem.com. *Id.* at ¶ 26.

The expert also observed subtle grammatical errors made by the phisher, who was apparently using a machine translation from another language to Portuguese to relay messages purporting to authorize the payment. *Id.* at ¶ 24. The expert further found that the hacked emails had been sent from unusual time zones and that the IP addresses did not originate in Brazil. *Id.* In addition, the expert determined that the phisher had set up the false email addresses through third-party providers to mask the phisher's identity. *Id.*

5

### III.    ZHONGSHAN CONTEMPLATES CIVIL AND CRIMINAL LITIGATION IN BRAZIL

#### a.  Contemplated Criminal Proceeding

As a party aggrieved by the fraud described above, Zhongshan has the right under Brazilian law to present evidence to the Brazilian authorities and to participate in a criminal fraud proceeding. *Id.* at ¶ 33. Accordingly, Zhongshan already has taken steps to exercise that right.

On January 11, 2023, immediately after having learned about the fraud, Zhongshan filed a criminal complaint with the state police in São Paulo, Brazil, in the municipality of Sorocaba. In the criminal complaint, Zhongshan recounted the details of the fraud, stated that it was a victim of that fraud, and explained that in Brazil such fraud constituted a crime. *Id.* at ¶ 28; De Luca Decl. at ¶ 13 and Ex. J (certified translation of criminal complaint). Specifically, Section 171 of the Brazilian Criminal Code criminalizes electronic fraud, providing, in relevant part, as follows:

> **Section 171. § 2-A.** The penalty is imprisonment, from four to eight years, and a fine, if the fraud is committed through the use of information provided by the victim or a third party induced into error through social networks, telephone contacts or fraudulent electronic mail, or through any other similar fraudulent means.
>
> **§ 2-B.** The penalty provided for in Paragraph 2-A of this Section, considering the relevance of the harmful result, shall be increased by one-third to two-thirds, if the crime is committed using a server maintained outside the national territory. Miranda Decl. at ¶ 29.

As a victim of criminal fraud, Zhongshan has legal standing to request that criminal charges be filed against the perpetrators of the fraud ("Contemplated Criminal Proceedings"), and to participate, as a plaintiff, in the proceeding conducted by the public prosecutor. *Id.* at ¶ 33.

Through this Application, Zhongshan seeks evidence for use in the Contemplated Criminal Proceeding in Brazil. *Id.* at ¶ 35. Namely, Zhongshan seeks information about the beneficiary of the payments that Zhongshan made through Citibank, purportedly to Pilarquim, as well as wire transfers sent and received by the phisher. *Id.*

6

### b. Contemplated Civil Proceedings

Zhongshan expects to file, and otherwise become a party to, civil proceedings in Brazil. More specifically, Zhongshan anticipates bringing an action in the Central Forum of the São Paulo State Court for (i) declaratory judgment regarding the unenforceability of the amounts claimed as due by Pilarquim; and (ii) an injunction to prevent the execution of the amounts by Pilarquim. *Id.* at ¶ 37. Zhongshan also plans to bring a claim in the same lawsuit to request that the phisher indemnify Zhongshan for any amounts owed. *Id.* at ¶ 46. A civil action for a declaratory judgment is provided for under Article 19 of the Brazilian Code of Civil Procedure ("CPC"), Law No. 13,105/2015, translated below:

> **Article 19.** A claimant may seek a declaration: 1) of the existence, non-existence, or the form of being of a legal relationship; of 2) of the authenticity or falsity of a document.

Brazilian courts have commonly applied Art. 19, Law No. 13,105/2015 of the CPC, in the context of a declaratory action regarding the non-existence of a debt and for the indemnification from the responsible party for damages. An action for declaratory judgment in Brazil is an adjudicative proceeding. In other words, the Brazilian court will rule on the issues being considered and determine the rights and liabilities of the parties.

Zhongshan also expects that Pilarquim will soon file a civil claim against Zhongshan to collect on the invoices at issue (together, the "Contemplated Civil Proceedings"). Indeed, Pilarquim recently sent a collection letter to Zhongshan, threatening legal action by the end of this month if Zhongshan does not fulfill its purported payment obligations. *Id.* at ¶ 47; De Luca Decl. at ¶ 14 and Ex. K. In either case, whether as a plaintiff or defendant in civil proceedings, Zhongshan will be able to use evidence relating to the beneficiary of the payments as well as the wire transfers sent and received by the phisher. Miranda Decl. at ¶ 45. Documents showing that Pilarquim directly or indirectly benefitted from the payment to Citibank would bolster

Zhongshan's defense against Pilarquim's civil claims; these documents would also help establish that Zhongshan is not responsible to pay the invoices or that the phisher should indemnify Zhongshan for the debts purportedly owed. *Id.* Documents showing that the beneficiary of the Citibank account indeed received the payment would also be useful to show that the payments were not later returned to Zhongshan. *Id.*

## IV. THE DISCOVERY ZHONGSHAN SEEKS

In aid of the Foreign Proceedings, Zhongshan seeks to obtain discovery from Citibank as well as from two wire-transfer clearing houses located in this District, CHIPS and Fed-NY.[2] De Luca Decl. at ¶ 2. CHIPS and Fed-NY are commonly known to act as clearinghouse banks for U.S. dollar-denominated wire transfers between domestic and international banks. Fed-NY "processes and settles payment orders individually in real time throughout the operating day. Participants can send up to one penny less than $10 billion in a single transaction…[It] frequently handles what are considered 'retail' payments (i.e., funds transfers that are not interbank transfers). The latter includes funds transfers sent by or to consumers."[3] CHIPS provides both transmission of instruction messages and settlement of funds between institutions to process international U.S.-dollar transfers made among international banks. CHIPS "is the only private-sector ACH and wire operator in the United States, clearing and settling nearly $2 trillion in U.S. dollar payments each day, representing half of all commercial ACH and wire volume."[4] Final settlements of transfers made through CHIPS "occur through adjustments in special account balances at the Federal Reserve Bank of New York."[5] CHIPS

---

[2] Zhongshan has not included a return date in the subpoenas. Should the Court grant Zhongshan's motion seeking discovery, Zhongshan will include a reasonable return date in the subpoenas.

[3] *Fedwire Funds Service Disclosure*, THE FEDERAL RESERVE 5-6 (Dec. 23, 2019), https://www.frbservices.org/assets/financial-services/wires/funds-service-disclosure.pdf. *See also Fedwire® and National Settlement Services*, FEDERAL RESERVE BANK OF NEW YORK, https://www.newyorkfed.org/aboutthefed/fedpoint/fed43 (last visited April 28, 2023).

[4] *Our History*, THE CLEARING HOUSE, https://www.theclearinghouse.org/about/history (last visited April 28, 2023).

[5] Sudhindra Bhat, *Financial Management: Principles and Practice* 170 (2d ed. 2008).

estimates that it handles 95 percent of all U.S.-. dollar payments moving between countries.[6] Together, CHIPS and Fed-NY constitute the primary network in the United States for both domestic and foreign large transactions denominated in U.S. dollars.[7]

In addition to seeking wire transfer records from CHIPS and Fed-NY, Zhongshan seeks bank transfer records, monthly statements, ultimate beneficial ownership records, and other account information from Citibank. Miranda Decl. at ¶ 51. Together, the records from CHIPS, Fed-NY and Citibank (the "Discovery Subjects") are relevant to identifying the phisher behind the Citibank account and also likely will reveal the location of the stolen funds. Miranda Decl. at ¶ 49.

## ARGUMENT

## I.   THE   APPLICATION   MEETS   EACH   OF   THE   STATUTORY REQUIREMENTS FOR DISCOVERY

Section 1782(a) empowers federal courts to grant applicants the ability to seek discovery in the United States for use in foreign proceedings. This *ex parte* application meets each of the statutory requirements of Section 1782, and it should be granted because all four discretionary factors identified by the U.S. Supreme Court in *Intel* weigh in favor of authorizing discovery here. 542 U.S. 241, 264-65 (2004).[8]

In pertinent part, 28 U.S.C. § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…The order may be

---

[6] *CHIPS*, Federal Reserve Bank of New York, https://www.newyorkfed.org/aboutthefed/fedpoint/fed36.html (last visited April 28, 2023).

[7] *See* Will Kenton, *Clearing House Interbank Payments System (CHIPS)*, Investopedia (Apr. 17, 2018), https://www.investopedia.com/terms/c/clearing-house-interbank-payments-system-chips.asp. *See also Payment Systems in the United States*, Bank for International Settlements 443 (Apr. 1, 2003), https://www.bis.org/cpmi/publ/d53.pdf ("There are two major large-value payment transfer systems in the United States: (1) Fedwire, operated by Fed-NY, and (2) CHIPS, operated by the Clearing House Interbank Payments Company L.L.C. (CHIPCo). Generally, these payment systems are used by financial institutions and their customers to make large-dollar, time-critical transfers. In addition, financial institutions may use separate communication systems to send payment instructions to their correspondents for the transfer of correspondent balances or to initiate Fedwire or CHIPS payments.").

[8] Section 1782 applications are commonly granted *ex parte* as the Respondents may challenge discovery requests after service. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012).

made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Thus, a district court is authorized to grant an application pursuant to 28 U.S.C. § 1782 if an applicant satisfies the following statutory requirements: (1) the party from whom the discovery is sought resides or is found in the district where the application is made; (2) the discovery is intended "for use" in a foreign proceeding; and (3) the application is made by an "interested person" in the foreign proceeding. *Id*. This Application meets all of the statutory requirements.

### A. The Discovery Subjects Reside or Are Found in the Southern District of New York

CHIPS, Fed-NY and Citibank are all headquartered in Manhattan and are thus found in New York. De Luca Decl. at ¶¶ 7-12 and Exs. D, E, F, G, H & I. Therefore, as other courts in this district have previously found when considering 1782 applications seeking discovery from CHIPS, Fed-NY and/or Citibank, these financial institutions are all "found" in this district. *See In re Vinmar Overseas, Ltd.*, No. 20-mc-277 (RA), 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020) (CHIPS is found in the Southern District of New York); s*ee also* Order, *In re Yeo*, 1:18-mc-483 (PKC) (S.D.N.Y. Nov. 1, 2018) (ECF No. 6)  (granting discovery pursuant to Section 1782 from several financial institutions and from Fed-NY); *See also* Order, *In Re Cooperatieve Rabobank*, 1:20-mc-89 (AKH), (S.D.N.Y. Feb. 18, 2020) (ECF No. 11) (granting discovery pursuant to Section 1782 from CHIPS, Citibank and other financial institutions). Accordingly, the first statutory requirement is met with respect to the Discovery Subjects.

### B. The Requested Discovery is "For Use" in the Foreign Proceedings

The discovery sought must be "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782 (a). A foreign proceeding need not be pending or even imminent, so long as it is "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*,

542 U.S. 241, 243 (2004). Regarding the Foreign Proceedings, the "for use" requirement is met because those proceedings are within reasonable contemplation.

With respect to the Contemplated Criminal Proceeding, Zhongshan has already filed a criminal complaint with the state police in São Paulo, Brazil, and the police are currently investigating the fraudulent conduct set out in the criminal complaint. Miranda Decl. at ¶ 28. Zhongshan also has retained Brazilian counsel, who has concluded that Zhongshan's submissions to the Brazilian police met the probable cause requirement for initiating a criminal investigation, and that, under Brazilian law, the Brazilian criminal authorities are obligated to investigate the cyber fraud perpetrated against Zhongshan. *Id.* at ¶ 34.

Additionally, for the Contemplated Civil Proceeding, Zhongshan plans to bring a civil lawsuit against Pilarquim in Brazil, to obtain a declaratory judgment that Zhongshan is not responsible for the debt purportedly owed to Pilarquim. *Id.* at ¶ 45. Zhongshan also plans to bring a claim in the same lawsuit to request that the phisher indemnify Zhongshan for any amounts owed. *Id.* at ¶ 36, 45. *Id.*  Moreover, as noted, Pilarquim already has sent a collection letter to Zhongshan, threatening civil litigation unless Zhongshan pays the invoices, and Zhongshan plans to defend against any such action by Pilarquim. *Id.* Given that the Foreign Proceedings are reasonably contemplated, the second statutory factor is met.

### C.  Zhongshan is an Interested Person

Zhongshan qualifies as an "interested person" because (1) Zhongshan is situated as a victim in the Contemplated Criminal Proceeding; and (2) Zhongshan expects to be a litigant in the Contemplated Civil Proceeding. *Id. See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 123-24 (2d Cir. 2017) (crime victims authorized to submit discovery in the foreign tribunal are interested persons); *Westjet Airlines, Ltd. v. Lipsman*, 2015 WL 7253043, at *2 (D. Colo.  Nov. 17, 2015) (citing *Intel*, 542 U.S. at 243 and explaining that "Plaintiffs are 'interested persons' to the foreign proceedings because they will be the plaintiffs in the [foreign] proceeding once

they identify the responsible individuals.") Under Brazilian law, because Zhongshan is a victim of fraud, it is an aggrieved person who has legal standing to file a criminal complaint for fraud. Miranda Decl. at ¶ 33 Further, Zhongshan has the right to participate as a criminal plaintiff in the forthcoming investigation and potential criminal trial, which would be conducted by a Brazilian public prosecutor. *Id.*

An "interested person" also includes a party to the foreign litigation. *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256 (2004) ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke Section 1782"). *See also Jiangsu Steamship Co., Ltd. v. Success Superior Ltd*., 2015 WL 3439220, at *3 (S.D.N.Y. Feb. 5, 2015) ("In *Intel*, the Supreme Court held that 'interested persons' include anyone, such as litigants and foreign officials, who has a reasonable interest in obtaining the information requested."). Therefore, Zhongshan is also an interested person because it reasonably expects, based on Pilarquim's threatening letters, that Pilarquim will bring a civil suit in Brazil to collect on the unpaid invoices, and Zhongshan intends to defend itself in that lawsuit. Miranda Decl. at ¶ 47. In addition, even if Pilarquim does not file its case, Zhongshan will file an affirmative civil suit and will be a litigant in that proceeding. Accordingly, Zhongshan is an "interested person" for both Foreign Proceedings.

## II.     EACH OF THE DISCRETIONARY FACTORS WEIGHS STRONGLY IN FAVOR OF GRANTING THE APPLICATION

Where, as here, the Application satisfies the statutory requirements, the district court also considers a number of discretionary factors in determining whether to grant or deny the Application. In doing so, the Court should keep in mind the "twin aims" of the statute: (1) providing an efficient means of assistance to participants in international litigation in our federal courts, and (2) encouraging foreign countries by example to provide similar means of assistance to our courts. *See In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486, at *4 (S.D.N.Y. Apr. 22, 2005) ("Section 1782's 'underlying policy should generally prompt

district courts to provide some form of discovery assistance.'") (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995)). *See also In re Malev Hungarian Airlines*, 964 F.2d 97, 100, 102 (2d Cir. 1992) (noting the "twin aims" of the statute in reversing district court's denial of discovery under 28 U.S.C. § 1782). Indeed, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

To further the purpose of the statute, the Supreme Court has delineated the following factors for district courts to consider when deciding whether to grant a discovery request pursuant to Section 1782: (a) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (b) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (c) whether the Section 1782 application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (d) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. *See Intel*, 542 U.S. at 264–66. Here, these factors support granting the Application.

### A.  The Discovery Subjects Are Not Participants in the Foreign Proceedings

The first discretionary factor weighs strongly in favor of granting the requested discovery because Citibank, CHIPS and Fed-NY are not, and are not likely to be, participants in the Foreign Proceedings. Miranda Decl. at ¶ 48. The Supreme Court has recognized that "nonparticipants in the foreign proceeding may be outside of the foreign tribunal's reach; hence their evidence, available in the United States, may be unobtainable absent 28 U.S.C. § 1782 (a) aid." *Intel*, 542 U.S. at 264; *see also In re Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding a respondent's "status as a non-party in the foreign actions weighs in favor of granting [the] application."); *In re Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2008), *aff'd sub nom.*

13

*Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (holding that the first discretionary factor favored granting of the application where the respondent was not subject to the jurisdiction of the foreign tribunals).

Here, Citibank, CHIPS and Fed-NY are not parties to the Foreign Proceedings nor are they subject to jurisdiction in Brazil. Miranda Decl. at ¶ 48. Under similar circumstances, courts in this district have granted Section 1782 applications to take discovery from Citibank, CHIPS and Fed-NY. *See In re Vinmar Overseas, Ltd.*, No. 20-mc-277 (RA), 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020) (granting a 1782 application to take discovery from CHIPS because it was not a party to the foreign proceedings); *see also* Order, *In re Yeo,* 1:18-mc-483 (PKC), (S.D.N.Y. Nov. 1, 2018) (ECF No. 6) (granting discovery pursuant to Section 1782 from several financial institutions and from the Federal Reserve Bank); Order, *In re Cooperatieve Rabobank*, 1:20-mc-89 (AKH), (S.D.N.Y. Feb. 18, 2020) (ECF No. 11) (granting discovery pursuant to Section 1782 from CHIPS, Citibank and other financial institutions).

## B. The Nature of the Brazilian Courts, the Character of the Foreign Proceedings, and the Receptivity of the Brazilian Courts Support Granting the Discovery Requested

The Foreign Proceedings are adjudicative in nature. In the Contemplated Civil Proceeding, a Brazilian judge will rule on the issues being considered, determining the rights and liabilities of the parties involved. Miranda Decl. at ¶ 50. In the Contemplated Criminal Proceeding, the police and prosecutorial authorities will analyze the evidence presented and then proceed with filing criminal charges. *Id.* at ¶ 28. Consequently, the nature of the Foreign Proceedings weighs in favor of granting the Application. *See, e.g.*, *Jiangsu*, 2015 WL 3439220, at 6 (discovery under Section 1782 is available for use in administrative and quasi-judicial proceedings, as well as strictly judicial proceedings); *In re Optimal Investment Servs. S.A.*, 773 F.3d 456, 462 (2d Cir. 2014) (granting Section 1782 discovery in aid of a Swiss criminal investigation).

The Second Circuit has made clear that, in examining receptivity, a district court should consider neither the *discoverability* of the evidence in the foreign proceeding nor the *admissibility* of evidence in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82. *See also In re Fleischmann*, 466 F. Supp. 2d 1020, 1034 (N.D. Ill. 2006) ("[a]n application for discovery under 1782(a) includes neither a foreign-admissibility rule nor a foreign-discoverability rule."); *Euromepa*, 51 F.3d at 1101 (because foreign courts could always rule upon the propriety of reliance on evidence obtained through the cooperation provided by American courts when it was presented to them, "the drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law.") (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 235–36 (1994)).

Therefore, in ruling on a Section 1782 application, a district court should not engage in "speculative forays into legal territories unfamiliar to federal judges," and should limit its inquiry "only [to] authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1109-10. Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.* at 1100.  Here, no such proof exists. Miranda Decl. at ¶¶ 49, 51. The relevant criminal and civil courts of Brazil would be receptive to the documentary evidence sought through this Application. *Id.* at ¶ 49. In addition, there would be no basis to challenge admissibility of the documentary evidence before the Brazilian courts, and such evidence is routinely used by Brazilian courts in criminal and civil proceedings. *Id.* Indeed, the Application is essential to developing evidence and information about the perpetrators and/or beneficiaries of the fraud. *Id.*

Moreover, given that Brazil is a signatory to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention"), March 18, 1970, 23

U.S.T. 2555, T.I.A.S. No. 744, Brazil is receptive to American judicial assistance. Miranda Decl. at ¶ 49. *See In re O'Keeffe*, 646 F. App'x 263, 267 (3d. Cir. 2016) (finding that "Hong Kong is a signatory to the Hague Evidence Convention, and thus the Hong Kong court is likely 'receptive to American judicial assistance.'") (*citing In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. Dec. 6, 2004) ("Venezuela has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation.")

Further, courts across the United States previously have authorized Section 1782 discovery requests for use in Brazilian proceedings. *See, e.g.*, *In re De Aquino Chad*, No. 19-MC-261, 2019 WL 2502060, at *4 (S.D.N.Y. Jun. 17, 2019) (granting application for use in Brazilian judicial recovery proceeding); *In re Xavier*, No. 05-12218, 2006 WL 858489, at *1 (11th Cir. 2006) (affirming grant of Section 1782 application in aid of Brazilian proceedings); *Lopes v. Lopes*, 180 F. App'x 874, 878 (11th Cir. 2006) (same); *Medeiros v. Int'l Game Tech.*, No. 2:16-cv-00877-JAD-NJK, 2016 WL 1611591, at *3 (D. Nev. 2016) (same and stating "[t]here is no indication that the Brazilian court would be unreceptive to such discovery."); *In re de Melo Pimenta*, 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013) (same); *In re Fleischmann*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006) (same and noting that, under the Brazilian Constitution, only an explicit law or ruling can preclude foreign discovery).

Moreover, the Brazilian courts in the Foreign Proceedings likely will be very receptive to the requested discovery. Miranda Decl. at ¶ 49. Therefore, the second discretionary factor weighs in favor of granting the request.

### C.  The Applicant Does Not Seek to Circumvent Proof-Gathering Restrictions or Other Policies

This Application is brought in good faith and does not seek to circumvent Brazilian restrictions with respect to foreign proof gathering or other polices. To the contrary, Brazilian law, which would govern the Foreign Proceedings, does not prohibit parties from seeking the

assistance of U.S. courts in collecting evidence. *Id.* Accordingly, U.S. courts routinely permit discovery under Section 1782. *See, e.g.*, *In re de Aquino Chad*, 2019 WL 2502060, at *4 (S.D.N.Y. Jun. 17, 2019) (granting Section 1782 discovery against some financial institutions for use in a Brazilian bankruptcy proceeding); *see also Fleischmann*, 466 F. Supp. 2d at 1034 (granting Section 1782 discovery for use in a Brazilian proceeding before a Brazilian labor court); *In re De Melo Pimenta*, 942 F. Supp. 2d 1282, 1287 (S.D. Fla. 2013) (granting Section 1782 discovery for use in a Brazilian proceeding involving a dispute over a will probated in São Paulo).

Typically, courts weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith, which is not the case here. *See In re Hill*, No. M 19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for 28 U.S.C. § 1782 assistance itself as a negative discretionary factor") (internal quotations omitted); *see also In re Gemeinschaftspraxis Dr. Med. Schottdorf*; 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006). Otherwise, courts in this district have granted Section 1782 applications even when the discovery sought was unavailable in the foreign jurisdiction or when the applicant has not first tried to obtain the discovery overseas. *See, e.g.*, *In re Mangouras*, No. 17-mc-172, 2017 WL 4990655, at *6-7 (S.D.N.Y. Oct. 30, 2017).

Because Zhongshan brings this Application in good faith and does not seek to circumvent Brazilian discovery procedures, the third factor weighs in favor of granting the Application.

### D.  The Requested Discovery is Not Unduly Burdensome

Section 1782 provides that discovery taken under the statute is governed by the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a). Thus, the Court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of

Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 302, 302 (2d Cir. 2015).

The scope of permissible discovery under Fed. R. Civ. P. 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) In fact, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The discovery that Zhongshan seeks is relevant to the Foreign Proceedings. As set forth above, an unknown phisher fraudulently induced Zhongshan to transfer US $3.5 million to a Citibank account in New York. Miranda Decl. at ¶¶ 24-28. Information regarding the ultimate beneficial owner of that Citibank account would help to reveal the identity of the phisher. *Id.* at ¶ 49 In addition, monthly account statements, wire transfer records and other account information would help reveal whether the phisher subsequently transferred the funds to other bank accounts and, further, could reveal whether the phisher collaborated with other wrongdoers. *Id.* at ¶ 51. In addition, wire transfer records from CHIPS and Fed-NY would help identify the ultimate destination of the stolen funds after they left the Citibank account. *Id.* These records would also help show that the funds Zhongshan sent to Citibank were not returned. *Id.* These records are relevant to both the Contemplated Criminal Proceeding and the Contemplated Civil Proceeding. *Id.*

In addition to being relevant, the requested discovery is not unduly intrusive or burdensome because it can be readily identified by the likely custodians and is unlikely to consist of voluminous information. *See In re Inversiones y Gasolinera Petroleos Venezuela*, No. 08-20378-MC, 2011 WL 181311, at *13 (S.D. Fla. 2011) (allowing discovery under

Section 1782 absent "specific showing" of burdensome or intrusive nature of request by respondent).

As set out in the proposed subpoenas (Exs. A, B & C), Zhongshan seeks documents and information regarding wire transfers made by a small number of individuals and entities during a very limited time period, in order to target the frauds recently committed by the phisher. De Luca Decl. at ¶¶ 4-6. Zhongshan seeks the types of records that Citibank, CHIPS and Fed-NY maintain and produce in the regular course of business.[9]  In fact, this Court has previously granted requests for similar discovery from these institutions under Section 1782. *See*, *e.g.,* Order, *In re Catalyst Managerial Services, DMCC*, No. 1:15-mc-408 (S.D.N.Y. Feb. 26, 2016), ECF No. 6 (granting discovery pursuant to Section 1782 from several financial institutions and from CHIPS); Order, *In re de Araujo Bertolla*, No. 1:17-mc-284 (S.D.N.Y. Nov. 13, 2017) (ECF No. 5)  (granting discovery pursuant to Section 1782 from several financial institutions and from CHIPS); Order, *In re Cooperatieve*, 1:20-mc-89, (S.D.N.Y. Feb. 18, 2020) (ECF No. 11) (granting discovery pursuant to Section 1782 from CHIPS and other financial institutions); Order, *In re Yeo*, 1:18-mc-483, (S.D.N.Y. Nov. 1, 2018) (ECF No. 6) (granting discovery pursuant to Section 1782 from several financial institutions and from the Federal Reserve Bank); Order *In re Yeo,* 1:17-mc-484, (S.D.N.Y. Jan. 8, 2018) (ECF No. 9) (granting discovery pursuant to Section 1782 from several financial institutions and from the Clearing House).

Therefore, the records sought are likely to be readily available to the Discovery Subjects, limited in scope and volume, and would consist only of financial records that that the Discovery Subjects keep as part of their regular business and routinely produce to law enforcement and civil litigants.

---

[9] In fact, the Clearing House dedicates a page on its website to instructions for subpoenas. *See Subpoena Instructions*, THE CLEARING HOUSE, https://www.theclearinghouse.org/about/subpoena-instructions (last visited April 28, 2023).

### III.    *EX PARTE* RELIEF IS CUSTOMARY AND APPROPRIATE HERE

District courts may and customarily do resolve Section 1782 applications for discovery through *ex parte* proceedings. *See, e.g., Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2002); *Esses v. Hanania*, 101 F.3d 873, 874 (2d Cir. 1996); *In re Ishihara Chem. Co.*, 121 F. Supp. 2d 209, 210 n.1 (E.D.N.Y. 2000), *vacated as moot*, 251 F.3d 120 (2d Cir. 2001); *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991); *see also In re  Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais,* 2013 WL 6164435, at *2 n.1 (E.D. Pa. Nov. 22, 2013); *In re Mesa Power Group, LLC*, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012) ("Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte* where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by the application.").

The Discovery Subjects' due process rights are not violated because they may challenge any discovery request by moving to quash the subpoenas pursuant to Fed. R. Civ. P. 45 (c)(3). *Gushlak*, 486 Fed. Appx. at 217 (2d Cir. 2012). *See also In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. at 32 n. 6 ("[S]uch *ex parte applications* are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.").

Courts in this district previously have granted Section 1782 applications on an *ex parte* basis with no further requirements. *See, e.g., In re Hornbeam Corp., No.14 Misc. 424 (Part 1), 2015 WL 13647606 at *4 (S.D.N.Y. Sept. 17, 2015)* ("Given the widespread recognition that § 1782 applications are properly handled *ex parte*, the fact that [the applicant] brought a § 1782 application might alone be understood as a 'good and sufficient reason' for proceeding *ex parte* that satisfies the substance of Local Rule 6.1(d)."). For these reasons, this Court should grant the Application *ex parte*.

## CONCLUSION

WHEREFORE, Zhongshan requests that this Court:

(1) Grant discovery pursuant to 28 U.S.C. § 1782 on an *ex parte* basis; and

(2) Authorize the issuance of the subpoenas attached to the Declaration of E. Martin De Luca (Exs. A, B & C).

Dated:      New York, New York
April 28, 2023

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ E. Martin De Luca
E. Martin De Luca
martin.deluca@kobrekim.com
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Scott C. Nielson
scott.nielson@kobrekim.com
Av. Pres. Juscelino Kubitschek, 1600
Conj. 112, São Paulo, SP 04543-000
Telephone: +55 11 4200 3280

*Attorneys for Applicant Zhongshan*